**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| MARK J. TARTAGLIA,<br>        Appellant, | DOCKET NUMBER<br>DC-0752-14-1108-I-1 |
|                v. | |
| DEPARTMENT OF VETERANS<br>    AFFAIRS,<br>        Agency. | DATE: May 5, 2016 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Neil C. Bonney, Esquire, Virginia Beach, Virginia, for the appellant.

Timothy M. O'Boyle, Esquire, Hampton, Virginia, for the agency.

## BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

## FINAL ORDER

¶1      The appellant has filed a petition for review of the initial decision, which sustained his removal for misconduct.  Generally, we grant petitions such as this one only when:  the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation

---

[1]  A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  See 5 C.F.R. § 1201.117(c).

or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. We MODIFY the initial decision as set forth in ¶¶ 6-16 below as to Charge 1, Specifications 1 and 2, and the penalty analysis. Except as expressly MODIFIED by this Final Order, we AFFIRM the initial decision.

¶2      The appellant was a GS-12 Supervisory Security Officer and Chief of Police at the agency's Hampton, Virginia Veterans Administration Medical Center (VAMC). Initial Appeal File (IAF), Tab 1 at 2, Tab 3 at 53. On July 18, 2014, the agency proposed the appellant's removal based on three charges: (1) Abuse of Authority (six specifications); (2) Lack of Candor (two specifications); and (3) Misuse of Government Property (one specification). IAF, Tab 3 at 54-57. The deciding official sustained Charge 1 (based on five of the six specifications) and Charge 2, and removed him from service effective September 19, 2014. IAF, Tab 3 at 11-13. The appellant filed a Board appeal under 5 U.S.C. chapter 75. IAF, Tab 1.

¶3      After a hearing, the administrative judge issued an initial decision affirming the removal. IAF, Tab 22, Initial Decision (ID) at 1, 10. She found that the agency failed to prove Charge 2 and that it proved only three specifications of Charge 1, but that removal was nonetheless within the tolerable limits of reasonableness based on these three specifications alone. ID at 2-10.

¶4      The appellant has filed a petition for review, arguing that the agency failed to prove two of the three remaining specifications and that the removal should be

reversed.  Petition for Review (PFR) File, Tab 1.  The agency has filed a response.  PFR File, Tab 3.

¶5    As explained above, only one of the three original charges against the appellant—Abuse of Authority—still remains.  And of the six specifications in that charge, only three of them–Specifications 1, 2, and 5—are still at issue.  According to Specification 5, the appellant had a subordinate officer drive him in a Government-owned vehicle on a personal errand (dropping off a rental car to the appellant's wife) while in duty status.  IAF, Tab 3 at 55.  The appellant admitted to this misconduct, the administrative judge sustained the specification on that basis, ID at 6, and the appellant concedes to this specification on review, PFR File, Tab 1 at 4, 5 n.1.  We therefore affirm the administrative judge's finding that Specification 5, and by extension Charge 1, is sustained.  *See Burroughs v. Department of the Army*, 918 F.2d 170, 172 (Fed. Cir. 1990) (holding that, where more than one event or factual specification supports a single charge, proof of one or more, but not all, of the supporting specifications is sufficient to sustain the charge).  For the reasons set forth below, however, we reverse the administrative judge's findings on the remaining specifications.

¶6    Specifications 1 and 2 pertain to the appellant's actions vis-à-vis two different applicants for employment, M.H. and K.S., but are otherwise substantially similar.  The agency alleged that the appellant had pre—existing relationships with these individuals from when he worked with them at Busch Gardens in the summer of 2011, and, in June 2013, he helped them obtain Police Officer positions with the agency.  IAF, Tab 3 at 54.  The agency alleged that the appellant requested and received information from Human Resources about 5 C.F.R. § 213.3102(u), a Schedule A hiring authority, and provided M.H. and K.S. with that information.[2]  IAF, Tab 3 at 54.  This assistance allowed M.H. and

---

[2] The parties refer to this appointing authority generically as "Schedule A."  This is not strictly correct.  "Schedule A" is a list of numerous excepted service appointing authorities, including the specific appointing authority at issue here, 5 C.F.R.

K.S. to appear on a noncompetitive certificate of eligibles for which the appellant was the selecting official. *Id*. The appellant selected both M.H. and K.S., and they obtained Police Officer positions. *Id*. The agency concluded that, by assisting these individuals with their applications and providing them preferential treatment in applying for a position with the agency's Police Service, the appellant abused his authority as Chief of Police. *Id*.

¶7        The administrative judge sustained these specifications, finding that, although there is nothing improper on its face about the appellant advising potential applicants about vacant positions in his department, the appellant went beyond mere advice and instead took a far more active role in the hiring of M.H. and K.S. ID at 3. Specifically, she found that the appellant provided these two individuals with sample disability certification letters and personally handed their applications to an agency Human Resources Specialist, along with the letters indicating that they were eligible for noncompetitive hiring because of targeted disabilities. ID at 3-4; IAF, Tab 3 at 125-37. The administrative judge noted that the Human Resources Specialist testified that no service chief other than the appellant had ever handed him a disability certification letter for an applicant, the appellant's personal involvement in the matter appeared to him "to be preselection," and of the five or six police officer positions that he helped fill at the VAMC, these were the only two filled noncompetitively pursuant to Section 213.3102(u). ID at 4. The administrative judge further found that the Supervisory Human Resources Specialist was the one who normally administered the Section 213.3102(u) hiring process, and that she had never had a selecting official bring her an applicant's disability certification letter either. *Id*. She also acknowledged the deciding official's testimony that the appellant's involvement

§ 213.3102(u), "Appointment of persons with intellectual disabilities, severe physical disabilities, or psychiatric disabilities." 5 C.F.R. part 213, subpart C. To avoid confusion, we will refer to this particular hiring authority rather than to Schedule A as a whole.

in the hiring process constituted unseemly preferential treatment and that his actions showed "from start to finish there was no intention to select anyone but them." *Id*. The administrative judge further noted that, when one of the individual's doctors informed him that his condition was too mild to constitute a disability, the appellant advised this individual to consult another doctor. ID at 5. Finally, she noted that the appellant sent one of the individuals an email advising him not to use the appellant as a reference on the application because it would not look good and could be construed as preselection. ID at 4-5. In sum, the administrative judge found that "the appellant abused his authority as both chief of police and the selecting official when he provided [M.H. and K.S.] with preferential treatment during the course of selecting them for these positions." ID at 5.

¶8      On petition for review, the appellant argues that the agency failed to show that there was anything improper about the assistance that he provided to M.H. and K.S. and that it therefore failed to show that he abused his authority. PFR File, Tab 1. We agree.

¶9      One of the ways in which the appellant assisted the applicants was by personally hand-delivering their applications to the Human Resources office. The agency established that it was unusual for a selecting official to do this. IAF, Tab 3 at 120-21; Hearing Transcript (HT) at 18, 105 (testimony of the Human Resources Specialist and the appellant).[3] However, the fact that it was unusual does not mean that it was improper. The agency did not identify any particular law, rule, or regulation that would prohibit the appellant from presenting these applications to Human Resources. Nor did the agency present any evidence that, by hand-carrying these applications to Human Resources, the appellant placed pressure on any agency official to act in a particular way. In fact, the Human

---

[3] The file contains two records of the hearing. A compact diskette (HCD) recording of the hearing is located at IAF, Tab 21. A written transcript of the hearing (HT) is located in its own separate folder, Volume III.

Resources Specialist to whom the appellant delivered these applications testified that he did not feel coerced or pressured by the appellant to process the applications. IAF, Tab 16 at 8, 10-11; HT at 52-53 (testimony of the Human Resources Specialist). The Supervisory Human Resources Specialist testified that it was improper for the appellant to hand-deliver the applications because they should have gone directly to her to ensure that there was no nepotism involved, the applicants were qualified, and their applications were in order. Hearing Compact Diskette (HCD), Track 3 (testimony of the Supervisory Human Resources Specialist). There is, however, no explanation of why the Human Resources office was unable to fulfill these functions merely because of how the applications were delivered. Furthermore, it is undisputed that the appellant's relationship with the two applicants was strictly professional and was limited to working with them one summer 2 years before the events at issue. HT at 66 (testimony of the appellant). We find that this is not the kind of close personal relationship that would give rise to an appearance of nepotism, conflict of interest, or use of public office for private gain. *Cf. Welch v. Department of Agriculture*, 37 M.S.P.R. 18, 22-23 (1988) (finding that an employee engaged in nepotism by creating a temporary position for his son and filling it without competition); *Rentz v. U.S. Postal Service*, 19 M.S.P.R. 35, 38 (1984) (concluding that a supervisor engaged in nepotism by evaluating his wife and recommending her for a promotion); 5 C.F.R. §§ 2635.502(b)(1) (relationships covered for conflict of interest regulations include close personal relationships with household members or relatives, as well as various relationships with financial implications), 2635.702 (an employee shall not use his public office for the private gain of friends).

¶10      The appellant also assisted the two applicants substantively. He informed them of the possibility of obtaining Police Officer positions under the 5 C.F.R. § 213.3102(u) hiring authority, sent them information on applying under that authority, provided them with sample disability certification letters, and reviewed

their résumés.  IAF, Tab 8 at 45, Tab 11 at 113-17.  He also advised K.S. to get a second opinion when K.S.'s doctor declined to certify his disability.  IAF, Tab 8 at 46.   However, the agency did not explain how the assistance that the appellant provided to M.H. and K.S. was any different than the assistance that they would have otherwise received from the Human Resources office.  The record shows that the Supervisory Human Resources Specialist is also the "Schedule A Coordinator."  HCD, Track 3 (testimony of the Supervisory Human Resources Specialist).   She stated that she ordinarily would receive applications from individuals under 5 C.F.R. § 213.3102(u), assist them with the application process, and counsel them about any deficiencies in their applications.  HCD, Track 3 (testimony of the Supervisory Human Resources Specialist).  Considering that  5 C.F.R. § 213.3102(u) applicants could  normally expect to receive substantially the same assistance from the agency's Human Resources office that M.H. and K.S. received from the appellant, we find that the agency failed to establish that the appellant abused his authority by rendering that assistance himself.

¶11      The deciding official, the Human Resources Specialist, and the Supervisory Human Resources Specialist all testified that the sum of the appellant's actions appeared to constitute "preselection" of M.H. and K.S.  HT at 18 (testimony of the Human Resources Specialist); HCD, Tracks 3, 5 (testimony of the Supervisory Human Resources Specialist and the deciding official).  Based on how the agency conducts its 5 C.F.R. § 213.3102(u) hiring, however, we are not convinced that the appellant's actions constituted preselection.   Under the agency's standard procedures, a selecting official will request a noncompetitive certificate, typically for vacancies that need to be filled promptly.[4]  HCD, Track 3 (testimony of the Supervisory Human Resources Specialist).  Such vacancies are unannounced.  *Id*.  The Human Resources office then will assemble, from a

_____

[4] It is undisputed that there was an acute need for Police Officers at the Hampton VAMC during the relevant time period.  HT at 69-70 (testimony of the appellant).

repository of applications known as the "applicant supply file," a certificate consisting of individuals who are eligible for noncompetitive appointment to the position in question. *Id.* The selecting official then will make his selections from this certificate. *Id.*

¶12        Although the appellant recruited M.H. and K.S. with the intention of filling the vacant Police Officer positions with them, there is no evidence that he intended to select them regardless of what other candidates might appear on the certificate. In fact, the certificate that Human Resources compiled for the appellant contained only three candidates—M.H., K.S., and a third candidate, C.J.— whose name was obtained from the applicant supply file. IAF, Tab 13 at 5; HT at 29-30 (testimony of the Human Resources Specialist). Although the appellant selected only M.H. and K.S., he testified without rebuttal that he would have selected C.J. as well if she were interested, but when he contacted her about the job, she declined.[5] HT at 106 (testimony of the appellant). We therefore find insufficient evidence to agree with the deciding official that "from start to finish, there was no intention to select anyone else." HCD, Track 5 (testimony of the deciding official). For the same reason, there is no evidence to support the deciding official's conclusion that M.H. and K.S. were hired due to "preferential treatment."[6] *Id.*; *cf. Rayfield v. Department of Agriculture*, 13 M.S.P.R. 444, 445 (1982) (sustaining an abuse of authority charge where the appellant repeatedly selected one employee for promotion in derogation of another employee's

---

[5] The agency points out on review that the appellant offered no documentation to show that C.J. declined consideration for the position. PFR File, Tab 3 at 5. This may be true, but the burden of proof on this charge lies with the agency, and not with the appellant. 5 U.S.C. § 7701(c)(1)(B); 5 C.F.R. § 1201.56(a)(1)(ii). If the appellant's testimony were untrue, the agency could have rebutted it by calling C.J. as a witness or otherwise obtaining a statement from her, which it failed to do.

[6] It could be said that M.H. and K.S. received preferential treatment over other potential applicants because they were hired noncompetitively for unannounced vacancies. However, this could be said of any candidate that the agency hires under 5 C.F.R. § 213.3102(u), and is therefore not attributable to any abuse of authority by the appellant.

promotion rights, thus affording the first employee preferential treatment and predetermining that he would move ahead in his career while the second employee would not).

¶13    Finally, we disagree with the administrative judge's finding that the appellant's advice to K.S. not to list him as a reference showed any indication that the appellant believed that the assistance that he rendered to K.S. was improper.  ID at 4-5; IAF, Tab 8 at 46.  The email in question indicates that the appellant thought it would be inappropriate for K.S. to use him as a reference to be hired for a position for which he was the selecting official.  IAF, Tab 8 at 46.  It is not probative of whether the appellant believed that the assistance that he was providing K.S. was improper per se.  *Id*.  We find that the agency failed to prove that the appellant abused his authority as alleged in Charge 1, Specifications 1 and 2.

¶14    The only remaining allegation of misconduct is Charge 1, Specification 5, that the appellant abused his authority by instructing a subordinate officer to drive him in a Government-owned vehicle, while in duty status, on a personal errand to drop off a rental car to his wife.  IAF, Tab 3 at 55.  As explained above, the appellant admitted to this misconduct.  *Supra* ¶ 5.  On review, the agency argues that the Board should uphold the removal penalty based on this specification alone.  PFR File, Tab 3 at 5.  We agree.

¶15    Where, as here, not all of the charges are sustained, the Board will consider carefully whether the sustained charges merited the penalty imposed by the agency.  *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 308 (1981). When the Board sustains fewer than all of the agency's charges, the Board may mitigate the agency's penalty to the maximum reasonable penalty so long as the agency has not indicated in either its final decision or in proceedings before the Board that it desires that a lesser penalty be imposed on fewer charges.  *Lachance v. Devall*, 178 F.3d 1246, 1260 (Fed. Cir. 1999).

¶16      Here, the agency did not indicate that it would have imposed a lesser penalty based on Charge 1, Specification 5 alone.  To the contrary, the deciding official testified that he would have removed the appellant based on this specification by itself.  HCD, Track 5 (testimony of the deciding official).  Specifically, the deciding official correctly noted that the agency's table of penalties suggests a penalty range of a 30-day suspension to removal for a first offense of "[w]illfully using or authorizing the use of Government passenger motor vehicle . . . for other than official purposes."  *Id*.; IAF, Tab 6 at 28.  He further stated that the appellant's misconduct was particularly serious because it went beyond merely misappropriating a Government vehicle, but also included instructing a subordinate to help him do so.  HCD, Track 5 (testimony of the deciding official).  The deciding official acknowledged some mitigating factors, including the appellant's outstanding work record and lack of prior discipline.  *Id*.; IAF, Tab 3 at 28-53.  We agree that these are mitigating factors, but we note that the appellant's tenure with the agency was only approximately 4 years, which somewhat tempers their significance.  IAF, Tab 3 at 16; HT at 65 (testimony of the appellant); *see Social Security Administration v. Carr*, 78 M.S.P.R. 313, 343 (1998), *aff'd*, 185 F.3d 1318 (Fed. Cir. 1999).  We also find that the appellant acknowledged this misconduct and expressed remorse.  IAF, Tab 3 at 97; HT at 73-74 (testimony of the appellant).  However, he did so only after initially denying the misconduct to agency investigators.  IAF, Tab 3 at 93-97; *see Singletary v. Department of the Air Force*, 94 M.S.P.R. 553, ¶ 15 (2003) (explaining that, where an employee's admission of misconduct and expression of remorse do not come until after the agency conducts its investigation, the employee's contrition is entitled to little mitigating weight), *aff'd*, 104 F. App'x 155 (Fed. Cir. 2004).  Considering these factors, along with the appellant's status as a supervisory law enforcement officer, and keeping in mind the employing agency's primary discretion in assessing penalties, we find that removal does not exceed the tolerable limits of reasonableness for the sustained misconduct.  *See*

*Saiz v. Department of the Navy*, 122 M.S.P.R. 521, ¶ 4 (2015) (finding that the employing agency, and not the Board, has primary discretion in maintaining employee discipline and efficiency); *Fischer v. Department of the Treasury*, 69 M.S.P.R. 614, 619 (1996) (noting that supervisors and law enforcement officials are held to a higher standard of conduct than other employees).

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You have the right to request review of this final decision by the U.S. Court of Appeals for the Federal Circuit. You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right. It is found in title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode.htm. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se

Petitioners and Appellants," which is contained within the court's <u>Rules of Practice</u>, and <u>Forms</u> 5, 6, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD:                      _____
                                         William D. Spencer
                                         Clerk of the Board

Washington, D.C.